UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALEX LOVELACE and HORANE WILLIAMS,
on behalf of themselves and all other persons
similarly situated

                        Plaintiffs,          **REPORT AND RECOMMENDATION**

      -against-                               18-CV-6892 (DLI) (ST)

LAND APPLICANCE SERVICES, INC.,
HAL GORDON, and IRA GORDON,

                        Defendants.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

       On December 4, 2018, Plaintiffs Alex Lovelace and Horane Williams filed this action against Defendants Land Appliance Services, Inc., Hal Gordon, and Ira Gordon seeking damages for alleged wage violations. *See* Complaint ("Compl."), ECF No. 1. Lovelace and Williams bring suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq*. *Id*. Lovelace and Williams allege that, while employed at Land Appliance Services, they were not compensated at the statutory minimum wage rate, nor paid overtime compensation. *Id.* ¶¶ 56–77. They also allege that Land Appliance Services: took unlawful deductions from their paychecks, failed to pay them their full wages earned, and failed to provide them with valid wage notices and weekly wage statements. *Id.* ¶¶ 78–95. On May 6, 2019, Alexa Lobban joined the suit. Plaintiffs filed a Motion to Certify an FLSA Collective Action on July 26, 2019. *See* ECF No. 21. Plaintiffs' Motion was referred to me by Chief Judge Dora Lizette Irizarry. *See* Order Referring Motion dated August 2, 2019. I respectfully recommend that the Motion to Certify be GRANTED.

    A. **Background**

       Land Appliance Services, Inc. is a home appliance business that is owned and operated by Hal Gordon and Ira Gordon. Compl ¶ 24. Land Appliance is located in Brooklyn, New

York. *Id.* ¶ 6. Lovelace and Williams were both employed by Land Appliance as "drivers/technicians" in overlapping periods starting in 2014 and ending in 2016. *Id.* ¶¶ 25–27.[1] Their primary duties included delivering and installing new appliances in customers' homes and removing and disposing of customers' old appliances. *Id.* ¶ 28.

Lovelace and Williams allege that they routinely worked in excess of forty hours per week. *Id.* ¶ 33; Declaration of Alex Lovelace ("Lovelace Decl."), ECF No. 22-1, ¶ 8; Declaration of Horane Williams ("Williams Decl."), ECF No. 22-2, ¶ 8. Both employees were paid a starting hourly rate of $8.25 an hour and received a raise in 2015 to $10.15 per hour. Lovelace Decl. ¶ 13; Williams Decl. ¶ 13. Land Appliance paid these hourly rates even for hours worked in excess of forty hours in a week. Lovelace Decl. ¶ 14; Williams Decl. ¶ 14. Lovelace and Williams both used a time clock to "punch" a time card at the beginning of the day, but they were routinely instructed to disregard their time card at the end of the day. Lovelace Decl. ¶ 12; Williams Decl. ¶ 12.

Lovelace alleges that he was hired from an advertisement on the website Craigslist. Lovelace Decl. ¶ 6. Both Lovelace and Williams were hired by Defendants Hal Gordon and Ira Gordon, who allegedly told them that they would receive an hour-long lunch break. *Id.* ¶¶ 6, 10; Williams Decl. ¶ 6, 10. Despite this promise, Lovelace and Williams "never got an hour for lunch." Williams Decl. ¶ 10; *accord* Lovelace Decl. ¶ 10. Both former employees allege that Defendants would "track[] [their] work with GPS, and if [they] stopped the truck for more than about 15 minutes, [they] would get a call from Hal [Gordon] or Ira [Gordon] telling [them] to get back to work." Williams Decl. ¶ 10; *accord* Lovelace Decl. ¶ 10.

Both Lovelace and Williams also allege improper deductions from their paychecks. Despite not actually getting an hour-long lunch break, both former employees allege that Land Appliance "automatically deducted an hour each day from [their] hours worked for a lunch

---

[1] Although Plaintiffs' job title is described as "driver/technician" in the Complaint, Plaintiffs also refer to their title as "driver/installer" in various filings. *See, e.g.*, Williams Decl. ¶ 7; Lovelace Decl. ¶ 7; Mem. Supp. Mot. Certify, ECF No. 23, at 3. For the sake of consistency and clarity, this Court will refer to the job title as simply "Driver" throughout the opinion.

2

break." Lovelace Decl. ¶ 15; *accord* Williams Decl. ¶ 15. In addition, Land Appliance deducted between $50 and $100 from their paychecks each week for various other deductions—Land Appliance allegedly told the employees that they deducted the money because the employees "scratched" appliances during the delivery process and also for parking tickets, which Lovelace and Williams insist were inevitable because Drivers had a busy schedule and were forced to park illegally. Lovelace Decl. ¶ 16; Williams Decl. ¶ 16.

Lovelace and Williams allege that there were approximately ten other employees who were also employed as Drivers. Lovelace Decl. ¶ 18; Williams Decl. ¶ 18. All of the Drivers were "paid at the same time, on Fridays," so Lovelace and Williams personally observed Ira Gordon "hand out the money to all of [the Drivers], some of [them] getting cash and some getting cash and checks." Williams Decl. ¶ 20; *accord* Lovelace Decl. ¶ 21.

Lovelace and Williams filed their Complaint on December 4, 2018, see ECF No. 1, and moved to certify an FLSA collective action on July 26, 2019. *See* ECF No. 21. In support of their Motion, Lovelace and Williams submitted personal declarations, cited above, and also submitted a declaration by a fellow Driver, Alexa Lobban, who consented to sue and thus is now a plaintiff in the action. *See* Declaration of Alexa Lobban ("Lobban Decl."), ECF No. 22-3; *see also* Consent to Sue, ECF No. 18.

Lobban alleged that that she worked as a Driver at Land Appliance Services from June 2015 through August 2016. Lobban Decl. ¶¶ 5, 7. Lobban alleged that she worked "at least 50 hours per work" and was paid "cash the entire time [she] worked for Land Appliance" at a rate of "$300 per week." *Id.* ¶¶ 6, 11, 12. Lobban alleged that she "did not get any breaks during the day" and would receive a call from Hal Gordon or Ira Gordon if she stopped her GPS-monitored truck in an effort to take a break. *Id.* ¶ 10.

Defendants responded to Plaintiffs' Motion to Certify. *See* ECF No. 26 (Affidavit/Declaration in Opposition to Motion to Certify); ECF No. 27 (Memorandum in Opposition). In their response, Defendants included declarations, time cards, and pay stubs from two current Land Appliance employees. *See* ECF No. 26-2 (Declaration of Bryant Armstead or

3

"Armstead Decl."); ECF No. 26-4 (time cards and corresponding pay stubs for Armstead); ECF No. 26-5 (Declaration of Barry Ruebin or "Ruebin Decl."); ECF No. 26-7 (time cards and corresponding pay stubs for Ruebin).

One of the current employees, Barry Ruebin, alleges that he has "deliver[ed] stoves and refrigerators for Land Appliance . . . for about three-and-a-half years." Ruebin Decl. ¶ 1. Ruebin alleges that he has "always been paid [his] overtime hours at time-and-a-half"; "no one has ever told [him] to skip [his] lunch breaks"; he punches in with a time card at the beginning and end of his shift; he has never been asked to work uncompensated time; and he was given the relevant wage and overtime notices. *Id.* ¶¶ 2–8. Land Appliance submitted another declaration from a current employee containing similar allegations. *See* Armstead Decl.

### B. Applicable Law

Under the FLSA, an employee may sue on behalf of herself and other employees who are "similarly situated." 29 U.S.C. § 216(b). Those "similarly situated" employees may opt-in to a collective action brought under the FLSA, and therefore become plaintiffs, by filing a written consent form with the Court. *Varghese v. JP Morgan Chase & Co.*, No. 14-CV-1718 (PGG), 2016 WL 4718413, at *5 (S.D.N.Y. Sept. 9, 2016); *see* 29 U.S.C. § 216(b).

The conditional certification of an FLSA collective action is a discretionary exercise of the Court's authority; it is useful as a case management tool, facilitating the dissemination of notice to potential class members. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 174 (1989)). Because it is discretionary, a motion for conditional certification involves a "far more lenient" standard than a motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. *Feng v. Soy Sauce LLC*, No. 15-CV-3058 (ENV) (LB), 2016 WL 1070813, at *2 (E.D.N.Y. Mar. 14, 2016).

Courts in the Second Circuit apply a two-step process to determine whether an action should be certified as an FLSA collective action. *Myers*, 624 F.3d at 554–55. In the first step, the Court looks at the pleadings, affidavits, and declarations to determine whether the plaintiffs

and potential opt-in plaintiffs are sufficiently "similarly situated" to issue notice and allow the case to proceed as a collective action through discovery.  *Id.* at 555.

The first step requires only a "modest factual showing" that plaintiffs and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  *Id.* (internal quotation marks and citations omitted).  The standard of proof is low "because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist."  *Id.* (emphasis in original).  Participants in a potential collective action need not have held identical jobs or been subject to identical treatment; rather, conditional certification is appropriate where all putative class members are employees of the same enterprise and allege the same types of FLSA violations.  *See Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165, 173 (S.D.N.Y. 2011).

If the plaintiffs satisfy this first step and are granted conditional certification, the Court will then, on a fuller record, determine whether the actual opt-in plaintiffs are in fact "similarly situated" to the named plaintiffs.  *Myers*, 624 F.3d at 555.  If the record reveals that the opt-in plaintiffs are not, then the Court may decertify the collective action and the opt-in plaintiffs' claims could be dismissed without prejudice.  *Id.*

Despite the "low burden" at the first stage, a "plaintiff must provide some actual evidence of a factual nexus between him and the rest of the class he seeks to represent; conclusory allegations will not suffice."  *Reyes v. Nidaja, LLC*, No. 14-CV-9812, 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015).  "Declarations submitted in connection with motions for certification must allege facts showing such a nexus, not mere statements that others are similarly situated."  *Id.*; *see also Myers*, 624 F.3d at 555.  Courts in this district have consistently held that, "where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations."  *Reyes*, 2015 WL 4622587, at *3 (citing caselaw).

5

C. Analysis

1. *Collective Action Certification*

Plaintiffs contend that they have met the "modest factual showing" required in order to certify an FLSA collective action. Plaintiffs contend that they have provided sufficiently detailed documentation of their own personal accounts, as well as others who were similarly situated. This Court agrees—Plaintiffs easily meet the "low" burden of showing similarly situated persons sufficient to certify an FLSA collective action.

Plaintiffs each provide a detailed account of their employment conditions while working for Land Appliance Services. These descriptions include their job title, job duties, typical weekly schedule, pay rate, and method of payment. Furthermore, Plaintiffs allege certain policies of Land Appliance Services—they allege that the employer routinely: asked them not to punch their time cards, made deductions to their pay checks, made them skip their lunch breaks, and did not provide wage and overtime notices.

Plaintiffs also allege sufficient facts to establish that other employees were similarly situated. Lovelace and Williams allege that they "remember at least 10 other employees of Land Appliance doing the same sort of delivery/installation work [that they were] doing." Lovelace Decl. ¶ 18; *accord* Williams Decl. ¶ 18. Lovelace and Williams allege that they "saw how the other drivers were paid" because all of the Drivers were paid at the same time on Friday. Lovelace Decl. ¶ 21; *accord* Williams Decl. ¶ 20. Lovelace and Williams allege that they "spoke with other drivers on several occasions, and [they] discussed how Land Appliance was taking money out of our checks and how they would never pay us for overtime." Lovelace Decl. ¶ 22; *accord* Williams Decl. ¶ 21. Finally, Lovelace and Williams allege that "[a]ll of us worked similar schedules[.]" *Id.* ¶ 19; *accord* Williams Decl. ¶ 19.

Lobban corroborates the accounts of Lovelace and Wiliams. Lobban states that she worked in the same job title as the named Plaintiffs and had identical job duties. Lobban Decl. ¶¶ 7, 8. She states that she worked similar hours and was routinely asked not to punch her time card when she returned at the end of the day. *Id.* ¶¶ 9, 12. Lobban was compensated at a rate of

$300 per week in cash, after deductions for "supposed damage to appliances" or "parking tickets." *Id.* ¶¶ 6, 13, 15. Lobban states that she observed approximately "12 or 13" other employees at Land Appliance doing the same type of work she was doing. *Id.* ¶ 16. During her period of employment, Lobban alleges that she observed "all of the drivers were also being paid in cash." *Id.* ¶ 20. Specifically, Lobban alleges that she spoke with another Driver named "Emmanuel" and they "discussed how Land Appliance was taking money out of our checks and would not pay us correctly for overtime." *Id.* ¶ 21.

"Courts in this Circuit commonly authorize the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees." *Diaz v. New York Paving Inc.*, 340 F. Supp. 3d 372, 382 (S.D.N.Y. 2018) (quoting *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481 (S.D.N.Y. 2016)). For instance, in *Romero v. La Revise Associates, L.L.C.*, 968 F. Supp. 2d 639 (S.D.N.Y. 2013), the court granted a conditional certification motion that was supported by a single affidavit by the named plaintiff, a tipped employee at a restaurant. The *Romero* plaintiff stated that he observed that it was "Defendants' policy to pay below the statutory minimum wage rate to all tipped employees" and that "no employee was allowed to punch in until they changed into required uniforms" and that neither he nor anyone else was given a "wage and hour notice" in their native language. *Id.* at 642; *see also Cheng Chung Liang v. J.C. Broadway Rest., Inc.*, No. 12-CV-1054, 2013 WL 2284882, at *2 (S.D.N.Y. May 23, 2013) (granting conditional certification based on one supporting affidavit containing probative evidence).

Plaintiffs' allegations are sufficient to find that there is a factual nexus that "binds the named plaintiffs and potential class members together as victims of a particular practice." *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012) (citations and internal quotation marks omitted). Plaintiffs allege that there were approximately 10 to 13 persons employed as Drivers at a given time, who worked similar hours and were subject to the same or similar pay scheme and the same overall working conditions. Plaintiffs allege having conversations with the other Drivers about their lack of overtime pay and the deductions that

7

were taken out of their paychecks. As in *Romero*, Plaintiffs allege a number of observations regarding Defendants' employment practices that form the basis of their wage complaints. Plaintiffs allege observing other Drivers being paid in the same or similar manner as them.[2] Thus, Plaintiffs allege the content of various conversations, as well as details regarding their own personal observations. Although Plaintiffs do not allege having specific conversations with such persons as to *every* detail of their compensation, such evidence is not necessary at this stage. *See Colon v. Major Perry St. Corp.*, 12-CV-3788 (JPO), 2013 WL 3328223, at *6 (S.D.N.Y. July 2, 2013) ("[I]t is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA." (citing caselaw)). Based on the three corroborating Declarations, this Court infers that there are other "similarly situated" Drivers who received similar deductions from their paychecks, were asked to avoid using the time clock at the end of their shifts, and were not paid the statutory minimum wage or overtime pay.

      Defendants attempt to defeat Plaintiffs' Motion to Certify by providing declarations from current employees that purport to rebut Plaintiffs' claims. At the current stage, this Court does not resolve factual disputes or make credibility determinations. *See Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010). Such evidence is, therefore, inappropriate. *See Benavides v. Serenity Spa NY Inc.*, No. 15-CV-9189 (JLC), 2017 WL 3835880, at *4–6 (S.D.N.Y. Sept. 1, 2017) (declining to consider declarations of current employees in FLSA certification proceeding); *see also Colon*, 2013 WL 3328223, at *5

---

[2] This Court recognizes that there are two alleged methods of payment in this case. Lovelace and Williams allege that they were always paid an hourly wage during their employment and they were paid in cash and check. Lovelace Decl. ¶ 13, 17; Williams Decl. ¶ 13, 17. Lobban, on the other hand, alleges that she was paid a flat rate of $300 per week in cash. Lobban Decl. ¶ 6, 19. Plaintiffs sufficiently allege minimum wage and overtime claims, however, even if their claims sound in slightly different facts. At this stage, these allegations are sufficient. *See Rosario v. Valentine Ave. Disc. Store*, 828 F. Supp. 2d 508, 516 n.8 (E.D.N.Y. 2011) (finding allegations sufficient where opt-in plaintiff was compensated at an hourly rate and plaintiff was always paid a fixed weekly salary). Despite the discrepancies, the record in this case "sets forth a modest factual showing that employees [of Land Appliance Services] were not paid the minimum wage or properly compensated for their overtime hours." *Rosario*, 828 F. Supp. at 516. Like in *Rosario*, "[t]he record reflects at least two methods of implementing such a policy." *Id.*; *see also* Williams Decl. ¶ 20 (alleging that he remembers seeing "some of [the Drivers] getting cash and some getting cash and checks.").

("Defendants . . . may not defeat a court's determination that Plaintiffs are similarly situated by submitting their own affidavits." (citation omitted)).

As such, Defendants' evidence is not appropriate at this first stage of collective certification in this FLSA action. In the second stage, the Court will have occasion to consider whether the persons who choose to join the suit are actually "similarly situated" and decertify the collective action if they are not. *See Myers*, 624 F.3d at 555. Plaintiffs have sufficiently alleged the presence of similarly situated persons to meet the standards for a grant of conditional certification. Therefore, I recommend the conditional certification of Plaintiffs' proposed collective of all Drivers who are working or worked for Land Appliance Services during the relevant time period.

2. *Form and Content of Notice*

Because this Court finds that certification is warranted, the next step is determining the form and contents of notice to prospective opt-in plaintiffs. District courts have the power to facilitate notice to prospective plaintiffs in an FLSA collective action. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–174 (1989); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). Courts use discretion to ensure that "putative plaintiffs receive 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 116 (S.D.N.Y. 2015) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (other citation omitted)). Accurate and timely notice fits with the "broad remedial purpose of the FLSA" and facilitates efficient judicial resolution of suits. *Braunstein v. Eastern Photographic Labs, Inc.*, 600 F.2d 335, 336 (2d Cir. 1978).

Plaintiffs have provided the Court with a Proposed Notice entitled "Notice of Lawsuit and Opportunity to Join." *See* Proposed Notice of Pendency of Collective Action, ECF No. 22-4. The Proposed Notice provides putative plaintiffs with notice of the pendency of the action and an opportunity to opt-in. *See id.* at 1. The Proposed Notice describes Plaintiffs' legal claims and advises that the Court has not ruled on any claims or defenses at this point. *Id.* at 2. The

9

Proposed Notice states the eligibility to join the suit and advises about the consequences of either joining or not joining the litigation. *Id.* at 2–4. The Proposed Notice clearly states that a recipient of the Notice is not obligated to join the suit, even if they have the right to do so. *Id.* at 1–2.

Defendants do not object to the form of the Proposed Notice. Despite the lack of opposition, this Court finds that several changes are appropriate to adequately apprise prospective plaintiffs of their right to counsel of their own choosing. On the third page of the Proposed Notice—under the heading "What Happens If I Join?"—it states, "If you choose to join this suit and agree to be represented by the named plaintiff through his attorney, your counsel in this action will be: [(listing Plaintiffs' counsel's address)]. [¶] "If you retain another attorney of your own choosing you will need to make arrangements as to payment directly with that attorney." ECF No. 22-4 at 3. The Proposed Notice does not adequately apprise prospective plaintiffs of their right to seek their own counsel—it implies that if a prospective plaintiff "choose[s] to join this suit . . . your counsel in this action will be [Plaintiffs' counsel]." While a careful reader might understand the right to "another attorney" of their "own choosing," a slight modification would add much-needed clarity. Even if a notice apprises of the right to independent counsel, it is improper to suggest that a prospective opt-in plaintiff must retain the named plaintiff's counsel if he or she chooses to opt in to the suit. *See Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 463 (E.D.N.Y. 2012) (revising language in notice where proposed notice did not adequately inform potential plaintiffs of their right to choose counsel). Accordingly, I recommend that the Court order the following revision:

> If you choose to join this suit, ~~and agree to be represented by the named plaintiff through his attorney, your counsel in this action will be~~ **you may be represented by an attorney of your choosing, including Plaintiffs' attorney**:
>
> [(listing Plaintiffs' counsel's address)]
>
> If you retain another attorney of your own choosing you will need to make arrangements as to payment directly with that attorney.

ECF No. 22-4 at 3.

Additionally, Plaintiffs' attached a proposed form entitled, "Consent to Join Collective Action and Become a Party Plaintiff" ("Consent to Join"). ECF No. 22-5. The Proposed Consent also needs revision because it suggests a prospective collective member does not have the right to independent counsel. It reads:

> By joining, I understand that I will be bound by any judgment of the court or settlement of this action. ~~I understand that I will be represented by Samuel & Stein without prepayment of costs or attorneys' fees.~~ I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendant on my behalf.

ECF No. 22-5.

The second sentence that is quoted above should be eliminated entirely, as it suggests that any person who joins as a collective member will necessarily be represented by Plaintiffs' counsel. This sentence serves no legitimate purpose, as any plaintiff who will be represented by Plaintiffs' counsel will also receive a retainer agreement covering those terms. As such, this Court recommends that the sentence regarding future representation by Plaintiffs' counsel be deleted.

Aside from those revisions, this Court finds that the Proposed Notice is appropriate. The Proposed Notice informs prospective opt-in plaintiffs of the "pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers*, 624 F.3d at 554. This Court's finding is confirmed by recent decisions from this Circuit approving essentially verbatim notices from Plaintiffs' counsel. *See Sanchez v. Malecon Rest. Corp.*, No. 18-CV-2199 (SN), 2019 WL 180994, at *3 (S.D.N.Y. Jan. 14, 2019) (approving proposed notice (see ECF No. 31-2) with slight textual changes); *Tello v. A.N.G. Diner Corp.*, No. 17-CV-749 (RRM) (CLP), 2018 WL 840045, at *12 (E.D.N.Y. Feb. 12, 2018) (approving proposed notice (see ECF No. 28-3) with one slight textual change).

Plaintiffs ask that the Notice be distributed in two ways: (1) mailed by first-class mail to potential plaintiffs and (2) posted at Defendants' place of business. Courts routinely approve requests to send notice to putative collective action members via first-class mail. *See Knox v.*

*John Varvatos Enters.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017) (collecting cases). Courts are split on whether the posting of notice at a defendant-employer's workplace should be permitted. *See id.* (noting disagreement among courts). Despite the presence of conflicting authority, this Court believes posting notice is appropriate because courts routinely order the posting of such notice and Defendants do not oppose the request. *See Hernandez v. Bare Burger Dio Inc.*, No. 12-CV-7794 (RWS), 2013 WL 3199292, at *5 (S.D.N.Y. June 25, 2013) (granting request to post notice where unopposed and noting that such posting "is regularly approved by Courts." (citations omitted)).

Plaintiffs request that putative plaintiffs have 60 days from the date of the mailing to submit their Consent to Join. Plaintiffs' request for a 60-day deadline is consistent with established FLSA practice. *See Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003) (authorizing deadline "60 days from date of notice mailing"); *see also Cohan v. Columbia Sussex Mgmt., LLC*, No. 12-CV-3203 (JS) (AKT), 2013 WL 8367807, at *12 (Sept. 19, 2013), *aff'd*, 2016 WL 1045532 (E.D.N.Y. Mar. 15, 2016) ("[A] 60-day notice period for potential plaintiffs is common practice under the FLSA.") (collecting cases).

As such, I recommend issuing an Order approving the Proposed Notice and Consent to Join forms, as modified above, with a 60-day deadline, and allowing Plaintiffs to send the forms via first-class mail and directing Defendants to post the forms in an employee common area.

    *3. Discovery Request*

Finally, Plaintiffs ask the Court to permit discovery of the full names and addresses of potential collective action members. Defendants do not oppose this request. "Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action." *Benavides*, 166 F. Supp. 3d at 488 (quoting *Martin v. Sprint/United Mgmt. Co.*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *1 (S.D.N.Y. Jan. 4, 2016) (collecting cases)) (other citations omitted); *see also Tate v. WJL Equities Corp.*, No. 13-CV-8616 (JLC), 2014 WL 2504507, at *2 (S.D.N.Y. June 3, 2014) ("Courts in this Circuit have

12

held that disclosure of employee contact information is relevant and appropriate in connection with conditional collective action certification." (collecting cases)). Disclosure of this information is "commonplace . . . because such information is essential to identifying and notifying potential opt-in plaintiffs." *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491 (WFK) (VMS), 2015 WL 4603117, at *14 (E.D.N.Y. July 29, 2015) (collecting cases).

As such, I recommend granting Plaintiffs' request and ordering the production of names, mailing addresses, e-mail addresses, telephone numbers, and dates of employment of potential members of the collective action.

### D. Conclusion

I respectfully recommend that Plaintiffs' Motion to Certify an FLSA Collective Action be GRANTED and that the District Court issue an Order directing that:

(1) Plaintiffs' proposed FLSA collective action be conditionally certified as including all current and former Drivers employed by Land Appliance Services, Inc. at any time on or after December 4, 2015 to the entry of an Order on the present Motion;

(2) Defendants produce the names, mailing addresses, e-mail addresses, telephone numbers, and dates of employment of potential members of the collective action during the period of December 4, 2015 to the entry of an Order on the present Motion;

(3) Plaintiffs be permitted to mail to all potential members of the collective the forms entitled, "Notice of Lawsuit and Opportunity to Join" and "Consent to Join Collective Action and Become a Party Plaintiff" (as modified in this Report and Recommendation) in English and any other language spoken natively by prospective collective members;

(4) Defendants post the Notice of Lawsuit and Consent to Join forms conspicuously in an employee common area and shall provide photographic proof of such posting to Plaintiffs in a timely fashion.

13

### E. Objections to this Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
January 3, 2020